STATEWIDE GRIEVANCE COMMITTEE *v.*
DANIEL V. PRESNICK
(13694)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued March 7—decision released May 22, 1990

*Daniel V. Presnick,* pro se, the appellant (defendant).

*Christine M. Whitehead,* for the appellee (plaintiff).

COVELLO, J. This is an appeal by the defendant, Daniel V. Presnick, an attorney at law, from a judgment of the Superior Court that suspended him from the practice of law for one year. The principal issues are: (1) whether grievance panels, reviewing committees and the statewide grievance committee function as an unconstitutionally created court in violation of article fifth, § 1 of the Connecticut constitution; (2) whether the defendant was denied due process in violation of the fourteenth amendment to the United States constitution and article first, § 10 of the Connecticut constitution; and (3) whether clear and convincing evidence is the appropriate standard of proof in attorney disciplinary proceedings.

The defendant further claims that the trial court erred: (4) in failing to find that the defendant had a cor-

rupt motive or an evil intent; (5) in failing to advise the defendant as to whether the filing of a complaint by a client constitutes a waiver of the attorney-client privilege, thus freeing the attorney to disclose potentially exculpatory information; (6) in finding that the defendant failed to advise a client of the taxing of costs based upon evidence contained in a single letter; (7) in concluding that noncontemporaneously maintained records cannot form the basis for computing billable hours; (8) in finding that the fee charged to the client was unreasonable; (9) in concluding that the defendant intended to withhold the client's money; (10) in failing to consider the defendant's "passive lien" on the client's funds; (11) in its findings as to the work performed for one of his former clients; and (12) in abusing its discretion in ordering his suspension. We find no error.

The record discloses that on January 5, 1989, the plaintiff filed a presentment of attorney misconduct alleging that the defendant had been guilty of misconduct in his dealings with four clients who had entrusted their legal matters to him. On February 17, 1989, the trial court conducted an evidentiary hearing concerning the four allegations. On March 7, 1989, the trial court found that the defendant had violated the Code of Professional Responsibility and the Rules of Professional Conduct in the course of his representation of each of the four clients identified in the complaint[1] and

---

[1] As to the first count, the trial court found that the defendant had violated DR 9-102 (B) of the Code of Professional Responsibility and Rule 1.15 (b) of the Rules of Professional Conduct by failing promptly to notify his client, Laura Vitello, that he had received funds on her behalf, by failing to turn those funds over to her new attorney after the defendant ceased representing her, and by failing to render a prompt accounting regarding her property. As to the second count, the trial court found that the defendant had violated Rule 1.5 of the Rules of Professional Conduct by charging his client, Frances Armstrong, an unreasonable fee. As to the third count, the trial court found that the defendant had violated DR 9-102 (B) (3) and (4)

rendered judgment suspending the defendant from the practice of law for three months as to each violation for a total suspension of one year. The trial court further ordered that the defendant be readmitted to practice at the conclusion of his suspension only after passing a comprehensive examination concerning his knowledge of the ethical obligations that lawyers owe to their clients. On March 22, 1989, the defendant appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

The defendant first claims that the trial court erred in not dismissing this action because grievance panels, reviewing committees and the statewide grievance committee function as an unconstitutionally created lower court in violation of article fifth, § 1 of the Connecticut constitution.[2] Specifically, he argues that General Statutes § 51-90 et seq. and Practice Book § 27B et seq. authorize grievance panels and reviewing committees to make findings of probable cause that attorney misconduct has occurred. Further, he argues that these same enactments authorize the statewide grievance committee to dismiss complaints, to issue reprimands, and to determine who shall be presented to the

of the Code of Professional Responsiblity and Rule 1.5 (b) of the Rules of Professional Conduct by double charging costs to his client, Margretta Fatcheric, by failing to keep complete records of funds received on her behalf, by failing to render appropriate accounts to her regarding such funds, and by failing to make prompt payment of such funds to her. On the fourth count, the trial court found that the defendant had violated Rules 1.5 (b) and 1.15 (b) of the Rules of Professional Conduct by charging his client, Kathy Jean Carney, an excessive fee for performing a routine and uncomplicated procedure in a family matter. The Code of Professional Responsibility applies to attorney conduct before October 1, 1986, at which time it was replaced by the Rules of Professional Conduct.

[2] Article fifth, § 1, of the Connecticut constitution provides: "The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."

court for discipline. He contends that all of these matters are exclusively judicial functions.

We note at the outset that constitutional issues do not exist in a vacuum. It is "well established that a litigant may challenge the validity of a statute or ordinance under the Connecticut constitution only as it has been applied to him. He may not claim that the provision is invalid because it impermissibly impinges upon the constitutional rights of others." *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 589, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986). In the present case, the plaintiff was not reprimanded by the statewide grievance committee nor did that body dismiss the complaints made against him. We need not therefore consider the constitutionality of these aspects of the grievance procedure. " 'The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity.' *Parker* v. *Los Angeles,* 338 U.S. 327, 333, 70 S. Ct. 161, 94 L. Ed. 144 (1949)." *Moore* v. *McNamara,* 201 Conn. 16, 21, 513 A.2d 660 (1986). The question then remains whether the grievance panel's and reviewing committee's authority to find probable cause and the statewide grievance committee's power to initiate a presentment charging an attorney with misconduct somehow usurp a constitutionally mandated judicial function that may only be exercised by the judiciary. We conclude that this is not the case.

Judges of the Superior Court possess the "inherent authority to regulate attorney conduct and to discipline members of the bar." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 523, 461 A.2d 938 (1983). "It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline." Id., 524.

In exercising their inherent supervisory authority, the judges have authorized grievance panels and reviewing committees to investigate allegations of attorney misconduct and to make determinations of probable cause. See Practice Book § 27B et seq. Further, the judges have empowered the statewide grievance committee to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. See Practice Book § 27M. In carrying out these responsibilities, these bodies "act as an arm of the court." *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 239, 558 A.2d 986 (1989).

The assignment to an adjunct of some function historically performed by judges does not necessarily constitute an impermissible delegation of judicial power. "[T]he functions of the adjunct must be limited in such a way that 'the essential attributes' of judicial power are retained in the . . . court." *Northern Pipeline Co.* v. *Marathon Pipe Line Co.,* 458 U.S. 50, 81, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). In the procedural scheme here in issue, the grievance panels and reviewing committees carry out what are essentially investigative, fact-bound functions that only determine the probability that an act of attorney misconduct has occurred. "[T]here is no requirement that, in order to maintain the essential attributes of the judicial power, all determinations of fact in constitutional courts shall be made by judges." *Crowell* v. *Benson,* 285 U.S. 22, 51, 52 S. Ct. 285, 76 L. Ed. 598 (1932); *Northern Pipeline Co.* v. *Marathon Pipe Line Co.,* supra, 78. For its part, the statewide grievance committee's only function in the case at hand was to initiate the presentment. The presentment that thereafter followed was a de novo, evidentiary proceeding carried out in court. The ultimate decision as to whether an act of misconduct had occurred reposed solely with the judge, as did the power to administer an appropriate sanction. This being the

case, we conclude that the delegation of the determination of probable cause to the grievance panel and reviewing committee here in issue, and the delegation of the presentment function to the statewide grievance committee did not strip from the court the "essential attributes" of the judicial function involved, i.e., the regulation of attorney conduct. In these circumstances, we find no impermissible delegation of judicial power.[3]

The defendant next argues that the grievance procedure that led to his presentment violated his constitutional right to procedural due process in violation of the fourteenth amendment to the United States constitution and article first, § 10 of the Connecticut constitution. Specifically, he claims that: (1) he was not given an opportunity to cross-examine witnesses at the grievance panel proceedings; (2) determinations of probable cause that he was guilty of misconduct were made by grievance panels without hearing the testimony of the parties; and (3) the public nature of the reviewing committee or statewide grievance committee hearings that follow a determination of probable cause create a stigma that is not corrected by a subsequent "name-clearing" hearing.[4]

---

[3] To the extent that the defendant's reference to article fifth of the Connecticut constitution implies that General Statutes § 51-90 et seq. amounts to an unconstitutional delegation by the legislature of judicial functions, we note that the judges of the Superior Court contemporaneously adopted rules setting forth an identical grievance process. See Practice Book § 27B et seq.

[4] In his due process argument, the defendant also challenges the plaintiff's practice of conducting its hearings in a judicial district other than the judicial district in which the attorney to be disciplined practices. The defendant argues that requiring him to defend himself in a "place so far removed" from his office imposed an unconstitutional burden upon him, making it difficult for him to attend the hearings or to produce favorable witnesses. The only authority upon which the defendant relies in support of this claim is the Declaration of Independence. One of the enumerated grievances against King George III recited that: "he has called together legislative bodies at places unusual, uncomfortable, and distant from the depository of their public records for the sole purpose of fatiguing them into compli-

"Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 176, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). "In [presentment] proceedings such as this a defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights." *Grievance Commmittee of the Bar of New Haven County* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941).

Practice Book § 27F sets forth the procedure whereby grievance panels may determine whether probable cause exists that attorney misconduct has occurred. Although provision is made for the conduct of proceedings at which testimony is given, such a proceeding is not required in all events. Section 27F (e) provides: "The complainant and the respondent shall be entitled to be present at any proceedings on the complaint at which testimony is given, and to have counsel present, provided, however, that they shall not be entitled to examine or cross-examine witnesses unless requested by the grievance panel." Once a grievance panel determines that probable cause exists, however, the statewide grievance committee or a reviewing committee must conduct a public hearing. See Practice Book § 27J (c). At such a hearing, "the respondent shall have the right to be heard in his own defense and by witnesses and counsel. The complainant and the respondent shall not be entitled to examine or cross-examine

ance with his measures . . . ." Given the geographical proximity of the various judicial districts in this state, the defendant's claim is without merit.

witnesses unless requested by the reviewing committee." Practice Book § 27J (d). In the context of the present case, the proceedings of the grievance panel, reviewing committee and statewide grievance committee served only as a predicate to a decision to file a presentment against the defendant in the Superior Court. The presentment that followed permitted the defendant a hearing in Superior Court according to the customary rules of evidence, and at which time he had the right to be present, to be represented by counsel if he chose, to cross-examine witnesses and to present evidence in his own behalf. We conclude that the process, when viewed in its totality, was adequate to meet the procedural safeguards required by the federal and state constitutions.

The defendant further claims, however, that the plaintiff's release to the media of the findings of probable cause against him damaged his franchise as an attorney, " 'a franchise which is regarded as a property right. *O'Brien's Petition,* [79 Conn. 46, 55, 63 A. 777 (1906)].' " *In re Application of Pagano,* 207 Conn. 336, 341, 541 A.2d 104 (1988). The gravamen of the defendant's argument is that the damage done to an attorney's reputation by the public dissemination of a determination of probable cause is so great that no subsequent hearing can correct the damage. He claims, therefore, a deprivation of a property interest without procedural due process.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin* v. *Constantineau,* 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971). "[T]he remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.' [*Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548

(1972)]. 'The purpose of such notice and hearing is to provide the person an opportunity to clear his name,' id., [573 n.12]." *Codd* v. *Velger,* 429 U.S. 624, 627, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977). The subsequent "name-clearing" hearing is required only where the defendant affirmatively asserts that the report that has caused the stigma was substantially false. Id. The plaintiff has not furnished any authority to the effect that the reputation of an attorney is an exception to these principles nor does our research disclose that this is the case. The public hearing that must follow a finding of probable cause; see Practice Book § 27J; or the presentment proceedings themselves provide a constitutionally adequate public forum at which the attorney may clear his name.

The defendant next claims that the trial court erred in applying the clear and convincing standard of proof rather than the beyond a reasonable doubt standard. The defendant argues that while proof by clear and convincing evidence is the proper standard to apply when issuing a reprimand, the proper standard to apply when seeking a fixed suspension should be proof beyond a reasonable doubt. We know of no authority that supports the proposition that such a floating standard of proof is either desirable or required.

Early grievance proceedings established that allegations of attorney misconduct were to be proven by a fair preponderance of the evidence. See *In re: Milton Harrison and Charles A. Harrison,* 4 Conn. Sup. 233, 234 (1936); *Grievance Committee* v. *Ralph Woolfson,* 2 Conn. Sup. 122, 127 (1935). We subsequently concluded that allegations of judicial misconduct were to be found by clear and convincing proof. *Council on Probate Judicial Conduct re: James H. Kinsella,* 193 Conn. 180, 190, 191, 476 A.2d 1041 (1984). We discern no good reason why this same standard should not apply to disciplinary proceedings involving lawyers regard-

less of the nature of the sanction ultimately imposed. This is the standard suggested in the American Bar Association Standards Relating to Judicial Discipline. See ABA Standards Relating to Judicial Standard 8.40; see also ABA-BNA Lawyers' Manual on Professional Conduct (1984) § 101: 2101. This also is the view shared by a number of other jurisdictions. See *Matter of Lurie,* 113 Ariz. 95, 546 P.2d 1126 (1976); *Ettinger* v. *Board of Medical Quality Assurance,* 135 Cal. App. 3d 853, 185 Cal. Rptr. 601 (1982); *In re Loss,* 119 Ill. 2d 186, 518 N.E.2d 981 (1987); *In re Bossov,* 60 Ill. 2d 439, 328 N.E.2d 309, cert. denied, 423 U.S. 928, 96 S. Ct. 275, 46 L. Ed. 2d 256 (1975); *Louisiana State Bar Assn.* v. *Edwins,* 329 So. 2d 437 (La. 1976); *Bar Assn. of Baltimore City* v. *Posner,* 275 Md. 250, 339 A.2d 657, cert. denied, 423 U.S. 1016, 96 S. Ct. 451, 46 L. Ed. 2d 388 (1975); *Matter of Wang,* 441 N.W.2d 488 (Minn. 1989); *In re Gillard,* 271 N.W.2d 785 (Minn. 1978); *In re Gross,* 67 N.J. 419, 341 A.2d 336 (1975); *In re Palmer,* 296 N.C. 638, 252 S.E.2d 784 (1979); *In re Robert Neil Gygi,* 273 Or. 443, 541 P.2d 1392 (1975); *In re Friday,* 263 S.C. 156, 208 S.E.2d 535 (1974).

We have carefully examined the defendant's remaining claims. We conclude that the factual findings placed in issue by these claims are supported by clear and convincing evidence and that the trial court correctly applied the applicable law to the facts so found.

In sum, "[i]n proceedings such as this a defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights. . . . *The ultimate question is whether he is a fit person to be longer allowed the privileges of being an attorney. . . .* His relations to the tribunal and the character and pur-

pose of the inquiry are such that *unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review.* " (Emphasis added.) *Grievance Committee of the Bar of New Haven County* v. *Sinn,* supra, 422.

The judgment is affirmed.

In this opinion the other justices concurred.