[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Statewide Grievance Committee in a presentment dated October 22, 1990 and filed in court on November 1, 1990 alleges that the respondent, Jeffrey R. Van Kirk, has been guilty of misconduct not occurring in the presence of the court involving his character, integrity and professional standing and conduct.
The presentment is in two counts. Count One alleges misconduct in his representation of one Miguel Mercado in the purchase of real estate located at 50 Elliott Street in Hartford, Connecticut. The second count alleges misconduct in the respondent's representation of Edith Mimo in connection with a personal injury she sustained as a result of an accident in 1983.
The respondent herein was duly admitted as a member of the bar of the State of Connecticut on October 4, 1977.
With reference to the first count, the court finds that on or about June 9, 1988 the respondent represented Mercado in the purchase of real estate located at 50 Elliott Street in Hartford, Connecticut. This transaction involved two purchase money mortgages; one for $25,000, which was to be paid off in monthly payments over an extended period of time; the second, and that with which we are concerned here, was for $25,500 with interest at 10% per annum and was payable in a lump sum six months from June 2, 1988.
On or about December 23, 1988 Mercado came to the office of the respondent with a check in the amount of $26,874.17 for the purpose of paying off the note for $25,500. The respondent told Mr. Mercado that he should not mail a check for such a sizable amount to Florida without first obtaining a release or having a release in escrow with an attorney and that he also questioned the amount. He informed Mr. Mercado that he would contact the attorney for the sellers, one Michael Sucoli; have him prepare a release; then turn the money over to said attorney directly for transmittal to his clients, and that in the meantime, he would have determined the correct amount of CT Page 2043 the payoff. In addition, he told Mr. Mercado to make a check payable to him personally in the amount of $25,000. This was done and Mr. Mercado provided Mr. Van Kirk with a check in that amount dated January 12, 1988. The respondent retained the check for $26,874.17 in his file and deposited the check for $25,000 in his clients' funds account (the incorrect date seems to have been ignored by the bank).
Respondent failed to promptly ascertain the correct amount of the payoff sum. Despite his claims of attempts to contact Mr. Sucoli, the court concludes that he failed to do so and failed to promptly transmit the correct payoff sum to either Attorney Sucoli or his client or to the sellers.
Beginning in the latter part of January, the respondent began to receive telephone calls approximately twice weekly from Marlene Rodriguez, one of the co-mortgagees, seeking payment of the mortgage.
In March of 1989, approximately eight weeks after the client brought in the first check, the respondent mailed a release to the mortgagees in Florida. This release was executed by them and returned to the respondent but he claims he never received it. Another release was prepared, executed and returned to respondent, whereupon he sent to the sellers a check for $25,000 dated March 21, 1989. This check was unsigned. The sellers protested that the amount of the check was incorrect and that it was unsigned. Despite the length of time since the original check was brought to the respondent's office and he numerous phone calls from Mrs. Rodriguez, he had, as of March 21, still not determined the correct amount of the check. On or about April 3, 1989 Mr. Van Kirk communicated with Mr. Mercado and, after running an amortization table on his computer, had Mr. Mercado provide him a check dated April 3, 1989 or $1,874.63 made out to respondent. This check, together with the $25,000 check, amounted to forty-six cents more than the check originally brought in by Mr. Mercado.
After receipt of this check, the respondent then issued a check dated April 3, 1989 to the Rodriguezes for the amount of $26,874.17, the same amount as that of the original check furnished by Mr. Mercado. This check was given to Amalia Castillo, a real estate broker who had procured the sale of the Lincoln Street property and co-signed the mortgage in question. She took the check to Florida and gave it to the Rodriguezes. On or about the 15th of April 1989, Marlene Rodriguez notified the respondent by telephone that his check had been dishonored for insufficient funds. The respondent informed her that he would have money wired to her bank. He then discovered that he had placed the supplementary check for $1,874.63 in his file CT Page 2044 and failed to deposit same. This was deposited to his account on April 17, 1989. Mrs. Rodriguez called the bank on several occasions but the money had not been deposited and she called Mr. Van Kirk. Finally, on April 24, 1989, Mr. Van Kirk wired the sum of $26,175.34 to Mrs. Rodriguez's bank and that sum was credited to her account. This was $698.83 short of the amount of the check that Mr. Mercado had originally given to Mr. Van Kirk, which was the correct amount at that time, and it did not account for interest from December to the present, which was April 24, 1989.
In early February 1990, Mrs. Rodriguez came to Mr. Van Kirk's office demanding the sum of $700 plus interest. After some discussion, in which Mr. Van Kirk misunderstood the claim for $700, he agreed that he did owe Mrs. Rodriguez interest and gave her a check for $1,200, which was for interest on the mortgage from December 1988 through April 24, 1989. Mr. Van Kirk did not understand Mrs. Rodriguez's claim for $700 until shortly before the hearing before this court. He paid the interest on the mortgage from December of '88 through April of '89 but he still owed her $698.83 plus the interest on that amount from December 1988.
In addition, Mrs. Rodriguez is claiming damages which she sustained by reason of the fact that she could not fulfill an alleged contract in Peru. She claims that she had a contract to purchase a house in Peru for $25,000 and when it was impossible for her to make payment because of Mr. Van Kirk's delay, the price was doubled.
With respect to Count Two the court finds the following facts. The respondent was retained in 1988 by Mrs. Edith Mimo, a court interpreter in the superior court for Hartford, who is also a social friend. He was to represent her as plaintiff's counsel with respect to a claim for damages for personal injuries which she had sustained in an automobile accident in 1983. The defendant was insured and the respondent entered into settlement discussions with the defendant's insurance company. He discussed the settlement figure with Mrs. Mimo and received her consent to settle for $3,200. On or about December 12, 1988 the respondent issued a check to Mrs. Mimo in the amount of $3,000, drawn on his clients' funds. At that time the respondent had no money in his clients' funds account and the check was worthless. He drew the check on the clients' funds account, knowing that there were insufficient funds in the account. When Mrs. Mimo could not cash the check, she filed a grievance dated December 16, 1988.
Subsequent to December 12, 1988 the respondent received a check from the insurance company made out to himself and CT Page 2045 Edith Mimo in the amount of $3,200. He deposited that check in his clients' funds account without obtaining an endorsement from Mrs. Mimo. Mrs. Mimo signed a release after she received Mr. Van Kirk's check. A few days later, after being notified that the check on his clients' funds account had been returned for insufficient funds, the respondent furnished Mrs. Mimo with a bank check for $3,000. Thereafter, Mrs. Mimo attempted to withdraw her complaint from the grievance Committee. Mrs. Mimo had informed Mr. Van Kirk that she had filed a grievance and he was award of the grievance when he furnished Mrs. Mimo with the bank check.
Mrs. Mimo did agree to a settlement with the insurance company of $3,200 after discussing same with Mr. Van Kirk, however, she never did see the check from the insurance company. She had agreed to take $3,000, which represented the net proceeds coming to Mrs. Mimo from the settlement of her case, after respondent's expenses. Mr. Van Kirk was not charging a fee for this case.
Mrs. Mimo had come into the respondent's office and picked up the first check which was in an envelope with her name on it but she did not discuss this check with Mr. Van Kirk. She did not receive any communication from Mr. Van Kirk at any time that she was not to cash the check right away.
The Statewide Grievance Committee in its presentment has made the following allegations as to Count One.
It has alleged in paragraph 11 that the respondent violated Section 1.15(b) of the Rules of Professional Conduct in that he mishandled funds entrusted to him by his client by his failure to promptly and properly turn over these funds to the proper parties. In paragraph 12 it has alleged a violation of Section 8.4(c) in that he engaged in conduct that involved fraud, deceit, dishonesty and misrepresentation by misdirecting client's funds to himself with intent to defraud and retaining such funds within his control and the failure to date to discharge his client's indebtedness. Also in paragraph 12 the committee alleges the violation of Section 8.4(d) in having engaged in conduct prejudicial to the administration of justice, citing the same basic facts as those outlined above.
In paragraph 13 the committee alleges a violation of Section 8.4(c) in that the respondent is alleged to have engaged in activity which involved fraud, dishonesty and deceit by conversion of his client's funds to his own use and by wrongfully appropriating them to himself. The same paragraph also alleges a violation of Section 8.4(d) in that he engaged CT Page 2046 in conduct prejudicial to the administration of justice and in support of this cites the same facts with relation to the previous section.
In paragraph 14, the Grievance Committee again alleges a violation of Section 8.4(c) in that the respondent engaged in conduct involving dishonesty and deceit and that he violated Section 8.4(d) by engaging in conduct prejudicial to the administration of justice, claiming that by misappropriating client's funds he wrongfully converted said funds to his own use without authorization from the client.
Paragraph 15 of the presentment alleges a violation of Section 8.4(c) by engaging in conduct involving a misrepresentation, citing failure to properly and promptly pay off a debt on his client's behalf after advising that he would do so.
Paragraph 16 alleges a violation of Section 8.4(c) by engaging in conduct involving dishonesty and misrepresentation and also a violation of Section 8.4(d) by engaging in conduct prejudicial to the administration of justice, citing in each case the drawing of a check against insufficient funds to pay off a debt on the client's behalf.
With respect to Count Two, the presentment alleges in paragraph 8 the violation of Section 8.4(c) by engaging in conduct involving dishonesty, deceit and misrepresentation by a failure to accurately inform the client about the status of her case and to inform her about the release and the settlement check and by issuing a bad check to the client.
Although some question may have existed in the past, it has been now firmly established that the correct standard of proof in a presentment of an attorney before the court under the grievance procedures is the clear and convincing standard of proof. Statewide Grievance Committee v. Presnick,215 Conn. 162 and Statewide Grievance Committee v. Presnick,216 Conn. 127.
With respect to both Count One and Count Two, this court is of the opinion that the Statewide Grievance Committee has met its burden of proof and this court finds, by clear and convincing evidence, that the respondent has been guilty of professional misconduct involving his character, integrity and professional standing.
Faced with a client who came to him with a check made out for a definite sum of money and a statement by the client as to the purpose for which it was given to him, and viewing CT Page 2047 this matter in the light most favorable to the respondent, that is, that he had some doubt in his mind as to which debt was being paid off and what was the correct amount, he owed a duty to the client because of the running of interest to promptly ascertain the correct amount and see to it that it was properly paid and he represented that he would do so. He grossly mishandled the client's affairs, as well as the client's funds, by not paying off the debt for approximately four months, thus running interest; by miscalculating the amount of the debt; by sending an unsigned check; by sending a check for insufficient funds; and ultimately by failing to pay off the full amount of the debt leaving it some $698.63 short plus the interest on said sum. Thus, the court is of the opinion that the Grievance Committee has met its burden of proof that the respondent violated Section 1.15(b) and Section 8.4(c) of the Code of Professional Responsibility as to mishandling and misrepresentation. The court is of the opinion that the Grievance Committee has proven that the respondent engaged in conduct prejudicial to the administration of justice in violation of Section 8.4(d), as alleged in paragraphs 12, 13, 14 and 16. An attorney at law acts in a fiduciary capacity when he engages in an undertaking for a client, particularly when he accepts money from the client for a particular purpose, as in this case. When, as in this case, he engages in the mishandling of his client's funds to the detriment of the client, he violates the fiduciary relationship and the standards of conduct imposed upon him as an officer of the court and a minister of justice and demeans and prejudices the positions of attorney at law and officer of the court, and thus the administration of justice with which they are entrusted.
The court, however, is of the opinion that the committee has failed to prove the allegations of paragraph 13 with reference to Section 8.4(c) of the Rules of Professional Conduct. It has failed to prove a conversion of the client's funds to his own use by wrongfully appropriating them to himself. The evidence clearly establishes that he had the client's funds deposited to his clients' funds account and that he mishandled these funds, but there is no evidence of the conversion of these funds to his own use and appropriation of them to his own use. The same is true of the allegation in paragraph 14 of violation of Section 8.4(c). However, with respect to paragraph 15 and its allegation of a violation of Section 8.4(c), the court is of the opinion that this has been proven by clear and convincing evidence and that he misrepresented to the client that he would pay off the debt properly and promptly.
As to paragraph 16 and the allegation of a violation of Section 8.4(c), the court is of the opinion that the committee CT Page 2048 has proven by clear and convincing evidence that he misrepresented to the client that he would pay off his debt, but there is insufficient evidence that he intentionally drew a check against insufficient funds. He originally had a check for $25,000 deposited to his account. He then sought a check for the difference between that and what he calculated to be the correct amount due. Later he did receive this check, but through careless mishandling of his client's funds, he did not deposit same. There is, however, no evidence that he misappropriated any of his client's funds to himself. There is no evidence as to the amount by which his account was overdrawn.
With respect to Count Two, the court is of the opinion that the Grievance Committee has proven by clear and convincing evidence that the respondent did violate Section 8.4(c), as alleged in paragraph 8 in that he knew he did not have sufficient funds in the account to cover the check drawn for the client and did not inform the client that he had insufficient funds. He also tailed to inform the client about the status of her case, obtaining a release from her without showing her the check from the insurance company in payment of her claim or having her endorse same. In this instance the court is of the opinion that the respondent did engage in conduct involving dishonesty and deceit, as well as misrepresentation.
The respondent having been found in violation of the Rules of Professional Conduct, as indicated, the court is bound to impose an appropriate penalty so that the administration of justice may be safeguarded and the courts and the public protected. The ultimate question is whether respondent is a fit person to be longer allowed the privileges of being an attorney. Statewide Grievance Committee v. Presnick, 215 Conn. 162,172. In deciding upon an appropriate penalty for the violations which are before the court in this case, the court must, for the protection of the public and the court system, examine the respondent's record as it relates to other difficulties before the Grievance Committee. In so doing the court finds that the respondent has now been reprimanded seven times under the Connecticut Rules of Professional Conduct and has also been reprimanded once by the Federal District Court. The majority of these cases also involve the attorney-client relationship and the mishandling of same. In view of this long history of the respondent's mishandling of the attorney-client relationship, this court finds that he should no longer be allowed the privileges of being an attorney at law and, accordingly, the respondent is suspended from the practice of law for a period of one year. In addition thereto respondent shall reimburse the Rodriguezes for the balance of CT Page 2049 the mortgage due them plus interest thereon. This suspension is to take effect 60 days from the date of this memorandum of Decision.
Statewide Bar Counsel is instructed to furnish this court with the names of at least three attorneys that it recommends as being capable of taking over the affairs of the respondent during his suspension, as provided for in Practice Book Section 46B, and the clerk of the court is instructed to make publications in the Conn. Law Journal as provided for in Practice Book, Sec. 36A.
Hale, J.