[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff David Wenc who is an attorney appeals a decision of the Defendant Statewide Grievance Committee (Committee) reprimanding him in the matter of Grievance Complaint #90-0393 filed by Irving S. Nixon, Jr. The Committee acted pursuant to Practice Book Sections 27J and 27M and General Statutes Sections 51-90g and 51-90h. This appeal is brought pursuant to Practice Book Section 27N.
FACTS
In 1984 Irving Nixon was convicted of assault in the first degree. He is now being confined at the Connecticut Correctional Institute at Somers, Conn. Based upon allegations that he was deprived of effective assistance of counsel before, at or after trial, he brought a habeas corpus petition against the warden of Somers prison.
On December 4, 1987, Attorney Wenc was appointed special public defender to represent Mr. Nixon in the habeas matter. Attorney Wenc's representation of Mr. Nixon commenced on December 12, 1987 with a review of the habeas petition at the public defender's office. CT Page 4025
There he discovered that Mr. Nixon was making claims of ineffective assistance of counsel against his trial counsel as well as his appellate counsel.
On June 16, 1988 Attorney Wenc received a letter from Mr. Nixon in which a motion for new trial and acquittal were enclosed. Based upon the letter he continued his investigation.
On August 3, 1988 Attorney Wenc instructed his private investigator to interview Mr. Nixon at Somers. He also wrote on the same day (August 3, 1988) to secure copies of Mr. Nixon's trial, and sentencing transcripts.
Shortly after he had begun his investigation, Mr. Nixon sent him a self-written motion dated August 16, 1988, requesting that he be relieved as his counsel. The Motion to Withdraw was calendared for November 4, 1988. Attorney Wenc requested a rescheduling of the motion.
Before a hearing on the motion, Mr. Nixon called collect to Attorney Wenc requesting that his habeas case be withdrawn. The appropriate withdrawal form was returned to Attorney Wenc on or about November 23, 1988. Upon receipt of the withdrawal, Attorney Wenc called Mr. Nixon to explain the repercussions of withdrawing the habeas writ and that the withdrawal would probably be granted with prejudice. Upon hearing this, Mr. Nixon changed his mind and said he wanted Attorney Wenc to remain on as his attorney and for the case to be prosecuted to conclusion.
On February 2, 1989, Mr. Nixon wrote to Attorney Wenc about his case status. Attorney Wenc wrote back and attempted to meet Mr. Nixon at Somers. During this time he also consulted with the public defender's office about the merits of Mr. Nixon's claim.
On June 28, 1989, Attorney Wenc again requested a copy of Mr. Nixon's transcripts.
On July 21, 1989, Attorney Wenc received and reviewed a copy of Mr. Nixon's presentence investigation that was utilized in his 1984 sentencing. He finally received a copy of the trial and sentencing transcript on July 29, 1989 at which time he commenced a review of them. Upon review of the transcripts, Attorney Wenc submitted an Amended Petition on behalf of Mr. CT Page 4026 Nixon.
In early 1990, Attorney Wenc discovered that the cumulative effect of the habeas cases he had taken on demanded much more time than he had contemplated. On January 12, 1990, he withdrew his appearance from all pending habeas cases. Included within these pending cases was Mr. Nixon's habeas case. Later that same month, plaintiff met with the habeas judge (Kaplan, J.) and the assistant public defender (John Watson) to discuss his motion to withdraw from the habeas cases. Following this meeting, Attorney Wenc contacted Mr. Nixon approximately seven times to discuss the possibility that his habeas case would be transferred to another special public defender. At all times Attorney Wenc continued to protect the client's legal interests by analyzing discovery responses from the state and filing the appropriate objections.
On April 6, 1990, Attorney Wenc spoke with Attorney Watson of the public defender's office again regarding assignment of Mr. Nixon's case. Attorney Watson admitted some difficulty in locating a lawyer willing to take on the habeas caseload. After a review of the pending habeas cases, Attorney Wenc wrote to Attorney Watson on October 2, 1990, to advise him that he was returning Mr. Nixon's habeas case to the public defender's office. On that same day, Mr. Nixon wrote to Attorney Wenc to explain that he understood and accepted the reassignment. Attorney Wenc responded with a letter dated November 9, 1990, which restated his request that the public defender's office find a new special public defender for the case. On November 29, 1990, the public defender's office wrote to the habeas judge to inform him that the Mr. Nixon file had been returned to their office by Attorney Wenc for reassignment. Ultimately, Mr. Nixon's habeas case was assigned to Attorney Pamela Mitchell of the Legal Aid Society.
On May 24, 1991, with the assistance of Attorney Mitchell, Mr. Nixon withdrew his writ of habeas corpus and it was dismissed. This withdrawal occurred approximately eight months after Attorney Wenc had withdrawn from the Nixon case. At the grievance hearing Mr. Nixon testified that he had not been forced or threatened into signing the withdrawal. He also testified that he understood that the petition was dismissed with prejudice and the impact of the dismissal.
From the time Attorney Wenc was assigned to the Nixon case CT Page 4027 until the time he withdrew, the record shows that he kept in constant communication with his client. It is also found that throughout his representation of Mr. Nixon, Mr. Nixon fluctuated between asking the plaintiff to withdraw as counsel, and/or the petition or to continue on as his attorney. Despite these fluctuations, Attorney Wenc appeared in court on behalf of Mr. Nixon approximately six times.
Nonetheless, on November 16, 1990, Mr. Nixon filed a complaint against the plaintiff with the Committee. In the complaint Mr. Nixon alleged that Attorney Wenc had violated Rule 1.3 of the Rules of Professional Conduct in that Attorney Wenc did not comply with his original request to withdraw as counsel and to dispose of the habeas case. He also claims that Attorney Wenc failed to return the case to the public defender's office when he did withdraw from the case.
PROCEDURE
The Grievance Panel for the Judicial District of Hartford/New Britain, on February 28, 1991, concluded that probable cause existed that the plaintiff had violated Rule 1.3 of the Rules of Professional Conduct.
Based on the evidence presented at the hearing, the Panel concluded that:
 "Wenc had failed to act with reasonable diligence and promptness in representing Nixon in the habeas matter and that the delays in the handling of the matter were unwarranted and inordinate."
On April 9, 1992, the Statewide Grievance Panel conducted a hearing. This hearing lead to Attorney Wenc's public reprimand on July 16, 1992, for violation of Rule 1.3 of the Rules of Professional conduct. The Committee based its finding on two factors:
 1) That Wenc had ordered transcripts and hired a private investigator eight months after being assigned to the case; and
 2) That Wenc renewed the transcript order ten months placing the original order. CT Page 4028
STANDARD OF REVIEW
The plaintiff in his brief recognizes that Appellate review of disciplinary determinations by the Committee generally are limited to a review of the record citing Pinsky v. Statewide Grievance Committee, 216 Conn. 228, 234 and 235 (1990). However, he is asking this court to exceed its ordinary scope of review and decide this appeal de novo claiming "this appeal turns on the interpretation of a specific disciplinary rule that has not been construed by the courts or the Committee." Therefore the plaintiff is asking this court to subject the committee's decision to plenary review and for the court to substitute its judgment on whether discipline was warranted.
The plaintiff argues that the second circuit decision of In Re: Grievance Committee of the United States District Court,847 F.2d 57 (1988) requires this court, when reviewing a committee decision that involves disciplinary rules, not be confined to the abuse of discretion standard. This court finds that to adopt the 2nd circuit opinion would basically subject all decisions of the committee that involve a disciplinary rule to de novo review. To adopt such a standard would render Practice Book 27N a nullity and be contrary to our Supreme Court's ruling in Pinsky, supra. This court finds that the "de novo" standard of review to be inappropriate, and that an appeal from a decision of the Statewide Grievance Committee is limited to a review of the record.
When looking at the record, this court's review of the Committee's decision to reprimand the plaintiff is limited to determining if the facts found are supported by the evidence and whether the conclusions that follow are legally and logically correct. Pinsky, at 234. The court should not retry the case or substitute its judgment for that of the Committee on the weight of the evidence or questions of fact. The proper inquiry for the court is whether the Committee acted arbitrarily or in abuse of its discretion. C L P v. DPUC, 219 Conn. 51, 57-58
(1991).
RULE 1.3
Rule 1.3 of the Rules of Professional Conduct provides that:
A lawyer must act with reasonable diligence CT Page 4029 and promptness in representing his client.
Rule 1.3 derives from two disciplinary provisions in the Model Code of Professional Responsibility, DR 7-101(a) and DR 6-101(3). Since the Model Rule does not reflect any substantive change from the Code, it is appropriate to use the prior Code provisions to interpret Rule 1.3. ABA Comment and Model Code Comparison to Rule 1.3. and Statewide Grievance Committee v. Dorio, (1990) Docket No. 264789.
DR 7-101(a) provides that:
 A lawyer shall not fail to meet the lawful, objectives of his client, fail to carry out his employment contract or injure his client.
DR 6-101(A)(3) states that:
 A lawyer shall not neglect a legal matter entrusted to him.
Neglect has been defined as indifference and a consistent failure to carry out the obligations which the lawyer has assumed to the client. ABA Informal Opinion 1273 (November 20, 1973). Consequently, mere delay does not amount to neglect. Committee of Prof. Ethics v. Bitter, 271 N.W.2d 521, 524 (Iowa 1979).
Accordingly, based on the predecessor provisions, Rule 1.3 is not violated unless the attorney:
 1) consistently failed to carry out obligations to the client;
 2) exhibited a conscious disregard for the responsibility owed to the client;
 3) failed to seek the lawful objectives of his or her client;
4) failed to carry out his employment contract; or
5) prejudiced the client.
Comment to Model Code Comparison under Rule 1.3. CT Page 4030
Reference to Rule 1.3's predecessor provisions must be accompanied by an examination of the Preamble to the Model Rules in order to properly interpret the rule. Connecticut has adopted the Preamble which states:
 The rules presuppose that whether or not discipline should be imposed for a violation and the severity of the sanction, depend on all of the circumstances such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.
 The classic pattern presented by conduct violating Rule 1.3 is that of the lawyer who takes on a matter and then lets it slide, frequently missing a time limitations, a court imposed deadline, or a court appearance. The lawyer then either ignores client inquiries, or responds with false assurances. Frequently, the lawyer compounds the problem . . . by refusing to turn over the file to the successor counsel.
Annotated Model Rules of Professional Conduct, Second Edition, 1992, Center for Professional Responsibility ABA, p. 45.
Our case law is also helpful in interpreting Rule 1.3. The court in Statewide Grievance Committee v. Friedland, 22 Conn. 131
(1992), reviewed the conduct representative of a Rule 1.3 violation. The behavior which lead the court to affirm disciplinary actions against an attorney consisted of the attorney's repeated failure to meet deadlines, attend hearings and respond to client inquiries. The court found the attorney's actions repeatedly prejudiced the client's interest, constituting a pattern of neglect. Courts, therefore, focus on the attorney's conduct not in isolation, rather, within the totality of the circumstances. A court will also concentrate on previous patterns of neglect or mismanagement by the attorney. Statewide Grievance Committee v. Dorio, Docket No. 262362 (1990).
Accordingly, a violation of Rule 1.3 of the Rules of Professional Conduct must amount to neglect by the attorney that can be proven by conduct such as missed deadlines and limitation periods, or any action that prejudices the client's CT Page 4031 interests.
STANDARD OF PROOF
In reviewing the Committee's decision, the court is guided by the substantial evidence test. Hack v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-42 (1987). The relevant inquiry is whether the record evidence is substantial enough to support a finding of an ethical violation by clear and convincing evidence. In Re Statewide Grievance Committee v. Presnick, 215 Conn. 162, 171 (1990). The burden rests on the Committee to show that attorney misconduct is proven by clear and convincing evidence. Id.
Clear and convincing proof is that which is strong, positive, free from doubt, and full, clear and decisive. Dacey v. CT Bar Assoc., 170 Conn. 520, 53-37 (1970). Consequently, the record must show by clear and convincing evidence that Attorney Wenc's representation of Mr. Nixon constituted neglect or mismanagement which prejudiced the client's interests.
ABUSE OF DISCRETION
In order to determine whether the Committee's finding was an abuse of discretion, the court must consider whether the conclusion was based upon a consideration of the relevant factors and whether there has been a clear error of judgment. Board of Alderman of the City of Shelton v. Bridgeport Community Antennae Television Company, 168 Conn. 294, 297 (1975). judging the propriety of the Committee's actions, the court must do so based solely on the grounds invoked by the agency. Burlington Truck Lines v. United States, 371 U.S. 156 (1962). When such grounds are found to be improper, the court lacks the authority to affirm the Committee's findings. Id.
The record before the court contains uncontradicted evidence that within four days of Attorney Wenc's assignment to the Nixon case, he reviewed the public defender's office file concerning the habeas petition. This initial investigation was supplemented on June 16, 1988 when Attorney Wenc received correspondence from Mr. Nixon and on August 3, 1988 when he ordered the trial transcript and hired a private investigator to interview Mr. Nixon. Ten months after the initial request when no transcript was forthcoming, Attorney Wenc renewed his CT Page 4032 original request. Within that ten month period Attorney Wenc was attentive to Mr. Nixon and his case. Attorney Wenc never missed a hearing and made approximately six court appearances on Mr. Nixon's behalf. Attorney Wenc also filed the appropriate motions and objections with regard to the petition. Finally, Attorney Wenc corresponded both with the client and the habeas judge on a continuous basis regarding the status of the case.
The Committee based its decision to reprimand Attorney Wenc because he took eight months to order the transcript and another ten month period passed before he renewed this request. As stated, Attorney Wenc took immediate action to investigate the case. Eight months did not pass before Attorney Wenc took any action whatsoever with regard to the case. Rather Attorney Wenc made a decision to wait before ordering the transcript. Furthermore, Attorney Wenc explained the ten month period as the usual time one must wait to obtain a transcript for a 1984 case. Consequently, Mr. Wenc saw no need to send the clerk a "prodding" letter with regard to the transcripts before the ten months had passed.
The Committee's decision to publicly reprimand the plaintiff clearly was not based on a consideration of all the relevant factors, rather on two isolated instances of conduct.
The record evidence clearly indicates that from the date of his assignment until he withdrew from the matter, Attorney Wenc had made approximately forty-five contacts with Mr. Nixon. In addition to those contacts, Attorney Wenc made at least six court appearances on Mr. Nixon's behalf, had amended the original complaint, made written objections to the Warden's motions and never once missed a deadline. If a hearing date posed an inconvenience to his schedule, Attorney Wenc made the appropriate motions to the court for an extension of time or for a continuance of the matter. The Committee clearly failed to give these factors any significant weight in making their determination.
The Committee also failed to consider the factors set forth in the Preamble. These factors include any previous violations, a failure to consider the client's inquiries, and a refusal by the attorney to turn over the file upon withdrawal. The record evidence shows that Attorney Wenc had no previous violations of the Rules of Professional Conduct, that he did take into consideration Mr. Nixon's inquiries, and that he did, CT Page 4033 in fact, turn over Mr. Nixon's file to the public defender's office upon withdrawal.
Finally, the Committee presents no quantifiable standard against which the eight and ten month periods can be measured to determine if a violation of Rule 1.3 did occur. The Committee possesses no chart or internal rules by which the reprimand can be substantiated. The Committee members themselves define when a reprimand is necessary.
THE COMMITTEE
The composition of the original panel, itself, raises a question as to the Committee's ability to make the decision to reprimand Attorney Wenc.[1] Although the panel's composition met the requirements of the Practice Book (at least one-third of the Committee was made up of "non-attorneys"), this initial panel was unusual in that it consisted of only one attorney and two laypersons. Furthermore, the attorney who was a member of the Committee, lacked any experience with regard to criminal matters.
Although this court recognizes that the judiciary has duly placed the responsibility to review attorney conduct in an administrative committee, this court feels that the composition of the reviewing committee that consisted of two laypersons and a lawyer with no criminal experience seriously affected their ability to arrive at a proper and fair decision. This court has to weigh that two-thirds of the reviewing committee had no legal experience whatsoever and that the practicing attorney was not familiar with criminal law. The reviewing committee's inability to understand what a habeas petition usually challenges, where it fits in the criminal system, whether they are perfunctatorily filed, what significance to place on the fact that Mr. Nixon challenged both the trial attorney's conduct and the appellate attorney's conduct, the lack of experience in ordering transcripts that are based on old trials and appeals, the inability to understand what a calendar means, how it serves to control the sequence of legal events, what weight to give to the fact that the trial court never complained about the pace of Mr. Nixon's litigation, what weight to place on the fact that the subsequent counsel withdrew the action, what consideration be, given to the fact that Attorney Wenc pursued Mr. Nixon's action after he wanted to dismiss him a couple times, where the fees earned by counsel fit within the lawyering world, or whether CT Page 4034 habeas corpus cases are the type of case that every lawyer want to handle. The inability to even pose questions, never mind to have answers to these questions, concerns this court. A panel that consists of a majority of two laypersons goes beyond the purpose of the Practice Book. Surely by placing lay people on the committee, the bar of this state did not mean to abandon its ability to discipline its own members.[2]
HABEAS CORPUS CASES
Attorney Wenc's candor toward the tribunal concerning his opinion of habeas corpus matters was a factor that the Committee placed too much weight on in making their determination to impose discipline. At the hearing, Attorney Wenc made a passing reference to the fact that the continued handling of habeas cases proved time consuming and provided little financial reward.
It appears the Committee placed an inordinate amount of weight on this statement in making its determination. By so doing the Committee failed to recognize that sanctions imposed on disciplinary proceedings against an attorney are not to punish the attorney, but rather to protect the public.
By taking the statement out of context, the Committee managed to give this declaration an entirely new and different meaning. Attorney Wenc made this statement to the habeas judge when he requested a transfer from certain habeas cases. He informed the judge that he was concerned that he could not provide all of his clients with adequate assistance because of his large caseload. The judge accepted his explanation and approved his Motion to Withdraw. The habeas judge obviously recognized the amount of time demanded by such cases.
Habeas corpus cases are also viewed in the legal arena as cases that are often quite time consuming but produce small monetary compensation. Wojculewicz v. Cummings, 143 Conn. 624,627 (1956). Many courts describe these cases as involving an extraordinary remedy that is granted only in the exercise of sound discretion. Id. The Committee should not be allowed to punish Mr. Wenc for his candor.
CONCLUSION
A review of the totality of the circumstances presented by CT Page 4035 the record reveals that Attorney Wenc used reasonable diligence and promptness in representing Irving Nixon in a habeas corpus matter. He never failed to carry out his obligations to his client; he consistently exercised his responsibility to his client and he never prejudiced his client's interests. Accordingly, there exists a lack of clear and convincing evidence within the record to support a violation of Rule 1.3 of the Rules of Professional Conduct. Consequently, this court finds that the decision of the Statewide Grievance Committee to discipline Attorney Wenc was an arbitrary and capricious decision and an abuse of the Committee's discretion.
This court therefore reverses the decision of the Statewide Grievance Committee to reprimand Attorney Wenc.
Norko, J.