[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the Statewide Grievance Committee seeking to have this court discipline the respondent as the result of his conviction of one count of violating Title26, United States Code, Section 7206(1), wilfully subscribing a false tax return, a felony. The respondent was sentenced to home confinement for one month, with probation for two years, including conditions of 200 hours of community service and a $2,500.00 fine. Because an attorney's judgment of conviction is conclusive evidence of the commission of the crime, the sole issue to be determined by this court is the extent of the discipline to be imposed. See Practice Book Section 2-41.
Citing Statewide Grievance Committee v. Shluger,230 Conn. 668 (1994), which also involved an attorney who was presented based on a conviction of the same charge, the petitioner asks CT Page 5279 that this respondent receive a suspension of no less than three years. The respondent points to Statewide Grievance Committee v.Glass, 46 Conn. App. 472 (1997), in which the respondent had been reprimanded following his conviction of the federal felony of subscribing false loan documents, and suggests that a reprimand would be a sufficient sanction.
The respondent entered into a plea agreement in connection with his criminal prosecution, and, in a "stipulation of offense conduct", admitted the following:
1: At all relevant times, the defendant David J. Skolnick was an attorney licensed to practice law in the State of Connecticut. His law practice was conducted as a schedule C business for tax purposes and was located at 62 Trumbull Street, New Haven, Conn.
2: In 1980, the defendant because involved in an office sharing arrangement with another attorney. This arrangement enabled both attorneys to share the cost of office expenses such as rent, telephone, electricity, supplies and some office equipment.
3: During the years 1990, 1991 and 1992, the defendant falsely claimed as deductions on his U.S. Individual Income Tax Returns, Forms 1040, certain Schedule C expenses. Skolnick overstated his business expenses fully deducting office expenses that he was to share equally with the other attorney and fully deducting secretarial wages for which he had received reimbursement from that attorney. The shared office expenses included rent, utilities, office supplies, insurance, publications, repairs and maintenance, postage and cleaning services.
4: The defendant also falsely claimed certain personal expenses as deductible business expenses in that he made excessive allocations of personal expenses for certain dues and other expenses. The defendant also falsely claimed certain personal expenditures as charitable contributions.
5: While the defendant does not agree with the specific amounts set forth below, he recognizes that the Government will claim that his conduct resulted in approximate amounts of additional tax due and owing for criminal purposes as follows:
1990: $ 21,956 CT Page 5280 1991: 24,510 1992: 13,799 ------ Total $ 60,265
Although the defendant does not agree with these specific amounts, he stipulates and agrees that the loss for criminal purposes exceeds $40,000.
This court conducted a hearing on the presentment on March 13 and 20, 1998. At that hearing, the respondent introduced a 365 page document which included letters of reference from more than 100 attorneys, friends and family members. This exhibit also included numerous medical records referring to the respondent's diagnosis of thyroid cancer, subsequent surgery and medication with synthetic thyroid hormone. The respondent also introduced the testimony of his psychiatrist, M.B. Shimelman, M.D., who expressed the opinion that during those periods of time when the respondent had to be taken off synthetic thyroid hormone so that recovery from cancer could be monitored, the respondent's judgment would be impaired and that he would be subject to periods of depression and a general loss of zeal and enthusiasm for life. He suggested that this could be the basis for the respondent's having violated federal law.
Several attorneys[1] also testified at the hearing. They unanimously spoke of their high regard for the respondent and their strong belief in his integrity and honesty. They lauded his substantial contributions to this area's Jewish community and described his federal conviction using phrases such as "an aberration" and "completely out-of-character".
It is interesting to note that the only actual evidence of impaired judgment affecting conduct that was offered by the respondent was his activities with respect to the three tax returns in question. It is true that these events occurred shortly after his surgery, but there has been no suggestion that in any other way the surgery or its aftermath caused any kind of aberrational conduct. With respect to the depression and loss of zest for life described by his psychiatrist, it appears that none of his close friends and associates noticed it. Indeed, they described an extremely active man, devoted to his family and his faith, who also played golf regularly and who throughout this period gave them absolutely no hint that anything was amiss. Thus, although there is no question in the court's mind that his CT Page 5281 illness had a profound effect on his life, and although this court has no reason to disagree with the opinion of Dr. Shimelman that withdrawal from synthetic thyroid hormone during certain periods of time could produce behavioral changes, this evidence does not persuade the court that the respondent's violation of federal tax law can be blamed on his medical condition.
The respondent himself testified that he was aware of the effects of his illness and medication on his energy level and general outlook on life, and that he would curtail his law practice from time to time in response to these effects and his anticipation of them. With that in mind, it is even more difficult to accept the conclusion that the respondent's filing of false tax returns was attributable to his medical condition. The court also notes that the respondent's decision to seek psychiatric treatment for depression and anxiety followed the IRS' commencement of an audit, an event that also put an end to three years in a row of false tax returns. The court concludes that the respondent's illness and consequent confrontation with his own mortality contributed, in some difficult to articulate way, to a weakening of the moral fiber that has otherwise characterized his life, but it cannot conclude that there was a chemical basis for his crimes. To his credit, the respondent himself does not offer his medical condition so much as an excuse, but rather as the only benign explanation that he can come up with for conduct which appears to perplex him and of which he is quite obviously thoroughly ashamed.
The respondent was admitted to the Connecticut Bar on September 23, 1971. He has practiced over the years with a number of law firms and most recently as a solo practitioner in a space-sharing arrangement. He has had no prior disciplinary actions of any kind since he has been a member of the Bar. As has been previously mentioned, he received numerous letters of support, both at his sentencing hearing in federal court and in connection with this disciplinary matter, and many highly respected attorneys took time out of their busy schedules to appear in both courts to testify on his behalf. Other than his federal conviction, no other negative information about the respondent was brought to this court's attention.
It is undisputed, however, that Rule 8.4(b)(c) provides that "it is professional misconduct for a lawyer to . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) CT Page 5282 engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The comment to this Rule goes on to state:
 Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category.
[Emphasis added].
The American Bar Association's Standards For Imposing LawyerSanctions, while not adopted by the Judges of the Superior Court, have been cited with approval by our Supreme and Appellate Courts. See Statewide Grievance Committee v. Shluger,230 Conn. 668, 673 n. 10 (1994); Statewide Grievance Committee v. Glass,46 Conn. App. 472, 481 (1997). Section 3.0 of the Standards states that "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." The standards at Section 9.0 state that "after misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose. Relevant Section 9.22 aggravating factors include:" . . . (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; . . . (i) substantial experience in the practice law; . . .
The Section 9.32 mitigating factors which might be relevant include: (a) absence of a prior disciplinary record; . . . (c) personal or emotional problems; . . . (e) full and free disclosure to disciplinary boards or cooperative attitude toward proceedings; . . . (g) character or reputation; . . . (h) physical disability; . . . (k) imposition of other penalties or CT Page 5283 sanctions; and (l) remorse.
The Commentary to Section 5 of the Standards states:
 5.1 of the ABA Standards for Imposing Lawyer Sanctions, entitled "Failure to Maintain Personal Integrity," provides: Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit or misrepresentation.
It is true that Section 5.11 of the Standards suggests that disbarment is generally appropriate when:
 "(a) a lawyer engages in serious criminal misconduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another person; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or "(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
The Commentary to Standard 5.11 notes:
 In imposing final discipline in such cases, most courts impose disbarment on lawyers who are convicted of serious felonies. As the court noted in a case where a lawyer was convicted of two counts of federal income tax evasion and one count of subornation of perjury, `we cannot ask the public to voluntarily comply with the legal system if we, as lawyers, reject its fairness and application to ourselves.' In re Grimes, 414 Mich. 483, 326 N.W.2d 380 (1982).
The Commentary to Standard 5.12 provides:
 Lawyers who engage in criminal conduct other than that described above in Standard 5.11 should be suspended in cases where their conduct seriously adversely reflects on their fitness to practice. CT Page 5284 As in the case of disbarment, a suspension can be imposed even where no criminal charges have been filed against the lawyer. Not every lawyer who commits a criminal act should be suspended, however. As pointed out in the Model Rules of Professional Conduct:
 Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious inference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
An attorney's fitness can be judged by conduct beyond his or her role as an attorney:
 "An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercised the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy."
In re Application of Pagano, 207 Conn. 336, 345 (1988) citing Inre Peck, 88 Conn. 447, 450 (1914). See, Statewide GrievanceCommittee v. Shluger, 230 Conn. 668, 674-675 (1994); Massameno v.Statewide Grievance Committee, 234 Conn. 539, 554-555 (1995).
A presentment proceeding "is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." Statewide Grievance Committee v.Rozbicki, 219 Conn. 473, 483 (1991), cert. denied, 502 U.S. 1094,112 S.Ct. 1170, 117 L.Ed.2d 416 (1992). The function of the grievance committee is to initiate presentment and thereafter a CT Page 5285 de novo evidentiary proceeding is carried out by the court, with whom rests the ultimate responsibility to determine whether an act or acts of misconduct occurred. Statewide Grievance Committeev. Presnick, supra, 215 Conn. 167. "In presentment proceedings, the Statewide Grievance Committee must prove by clear and convincing evidence that the attorney misconduct it alleges has occurred." Statewide Grievance Committee v. Whitney,227 Conn. 829, 838 (1993). In this case, the federal conviction itself is proof of the misconduct, and the respondent acknowledges not only the misconduct covered by the conviction, but also the additional misconduct recited in his plea agreement.
Practice Book Sec. 2-41 requires the reviewing court to determine "the extent of the final discipline to be imposed. . . ." The "paramount importance in attorney disciplinary matters is the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." Statewide Grievance Committee v. Shluger, supra at 668. "Courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice." In rePeck, 88 Conn. 447, 457 (1914).
The preamble to our Rules of Professional Conduct states, in part, that "[a] lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." The attorney's oath requires him or her, first and foremost, to "do no falsehood". The respondent's actions reflect a major departure from our Rules and from the attorney's oath. His conduct extended over a prolonged period of time and requires a firm response.
"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, CT Page 5286 but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Citation omitted; internal quotation marks omitted.) Doe v. Statewide Grievance Committee,240 Conn. 671, 684-85, ___ A.2d ___ (1997) citing Massameno v.Statewide Grievance Committee, 234 Conn. 539, 554-55,663 A.2d 317 (1995).
In arriving at an appropriate sanction, therefore, the court needs to begin with a rather strong presumption in favor of stern discipline that should result from me felony conviction of an attorney, especially one for actions that display dishonesty and deceit. Against that, the court must balance more than a quarter of a century of law practice in which the respondent has achieved the respect of his peers and others, not only for his legal work, but also for his involvement in the affairs of his religious community. Additionally, although a felony conviction for an act of dishonesty is an indirect indication of the respondent's lack of fitness to practice law, it must be recalled that there have never been any allegations that the respondent has actually practiced law in a fashion that directly indicates a lack of fitness, nor is there any evidence of direct disservice to the respondent's client or to the courts. Balancing these considerations as best as it can, the court concludes that the respondent's twenty five years of unblemished practice and community involvement, combined with his admission of wrongdoing and remorse, mitigate strongly against the harshness of the sanction sought by the petitioner. On the other hand, the seriousness of his misconduct renders reprimand an altogether inadequate response.
It is therefore the judgment of the court that the respondent's license to practice law be suspended for a period of one year. This suspension will take effect on June 1, 1998, to allow the respondent time to wind down his practice. Attorney Jonathan Katz of New Haven is appointed to protect the interest of the respondent and of his clients.
Jonathan E. Silbert, Judge