[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
On September 13, 1994, the plaintiff, Maureen Phelan, filed an eight count revised complaint against the following defendants: Board of Education of the Town of Bloomfield ("Board"); Paul Copes in his official capacity as the CT Page 2652 Superintendent of Schools and individually ("Copes"); Belinda Carberry in her official capacity as principal of Bloomfield High School and individually ("Carberry"); and Frances Pass in her capacity as Social Studies Coordinator and/or Humanities Coordinator for the Bloomfield School System and individually ("Pass").
In her revised complaint, the plaintiff alleges the following: On or about August 20, 1990, the defendant Board promulgated a revised Teacher Evaluation System which purported to create a system-wide evaluation process for all Bloomfield teachers. The stated objectives of the evaluation process provide for, inter alia, "a means of assuring that all teachers meet system performance standards as described in Bloomfield's performance areas and teaching competencies." (Plaintiff's Revised Complaint, Count One, Para. 7). Additionally, the Teacher Evaluation System provides for due process rights and protections as part of the evaluation system.
The plaintiff, a tenured teacher, was subject to a three year cycle of evaluation commencing with "summative evaluation" for year one and "formative evaluation" for years two and three, as set forth in the Teacher's Evaluation System. Defendant Pass, lacked the academic, administrative and/or professional credentials to participate in the evaluation process but participated in the evaluation of the plaintiff during the 1990 — 1991 school year. Defendants Board, Copes, and Carberry had knowledge of and concurred in defendant Pass' evaluation of the plaintiff.
Defendant Pass was motivated by personal bias and animosity toward the plaintiff and played an inappropriate role in the evaluation process. On May 29, 1991, defendant Pass accused the plaintiff of insubordination.
On or about May 31, 1991, as a result of the evaluations conducted by defendants Pass and Carberry, defendant Carberry gave the plaintiff ratings of 3 in the areas of "human relations," "professional development," and "goals." A rating of 3 reflects that "the teacher does not demonstrate mastery of one or more of Bloomfield's performance areas and/or the Connecticut teaching competencies."
The evaluation was based on written and oral statements CT Page 2653 submitted by defendants Pass and Carberry. The statements contained in the final evaluation report and in the oral and written statements accompanying it were false and malicious. As a result of the evaluation, the plaintiff was placed on "intensive assistance" commencing with the 1991 — 1992 academic school year.[1]
On May 29, 1992, the plaintiff was again placed on "summative evaluation." Defendants Copes and the Board approved and adopted the aforementioned actions of defendants Pass and Carberry.
Subsequently, the plaintiff filed a grievance against the Board in an attempt to have the decision to place her on "intensive assistance" revoked, and further requested that the aforementioned statements be retracted and/or purged from her file. The grievance was determined to be not arbitrable under the terms and conditions of the Collective Bargaining Agreement between the Board and the Bloomfield Education Association.
On various dates following the May 31, 1991 evaluation, defendant Pass continued to make false and malicious statements, both oral and written, which are designed to embarrass, humiliate and demean the plaintiff. Such statements are also designed to compromise the plaintiff's employment status and career.[2]
The plaintiff's status as a recipient of "intensive assistance" and the statements made about her are known throughout the school system, and specifically among administrators, teachers, students and members of the community at large.
In counts one and two of the revised complaint, the plaintiff alleges that the actions and statements of the defendants constitute libel and slander, respectively. Count three sounds in invasion of privacy on a false light theory. Count four sounds in intentional infliction of emotional distress.
Additionally, in counts five and six the plaintiff alleges a violation of her due process rights under the United States and Connecticut constitutions and an intentional interference with the plaintiff's business expectancies, CT Page 2654 respectively. The seventh count alleges negligent employment practices against the defendants and a violation of General Statutes § 31-49. The eighth and final count is directed against the defendant Board and alleges that the Board must indemnify defendants Pass, Carberry and Copes in the event of a judgment against them by virtue of General Statutes § 10-235.
On October 24, 1994, the defendants filed a motion to strike counts five, seven, and eight of the revised complaint, as well as the prayers for punitive damages relative to the fifth and eighth counts. In accordance with Practice Book § 155, the defendants have filed a memorandum of law in support of their motion, and the plaintiff has filed a memorandum of law in opposition.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Citations omitted.) Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). "The motion to strike . . . admits all facts well pleaded." Ferryman v.Groton, 212 Conn. 136, 142, 561 A.2d 432 (1989).
"In ruling on a motion to strike the trial court is limited to considering the grounds alleged in the motion."Meredith v. Police Commission, 182 Conn. 138, 140 A.2d 27
(1980). "The court must construe the facts in the complaint most favorably to the plaintiff." Gordon v. Bridgeport HousingAuthority, supra, 208 Conn. 170.
COUNT FIVE — DUE PROCESS
In their memorandum in support of their motion to strike, the defendants argue that the plaintiff has failed to properly allege a violation of her due process rights pursuant to42 U.S.C. § 1983. The defendants cite Daniels v. Williams,474 U.S. 327 (1986), for the proposition that one seeking to invoke the protections afforded by the due process clause of the Fourteenth Amendment must demonstrate that the government made a deliberate or intentional decision to deprive him or her of liberty or property. The defendants argue that "the plaintiff has not alleged that the Bloomfield Board of Education deliberately or intentionally made a decision that deprived her of her liberty interests." Rather, the defendants argue, the plaintiff merely alleges that the CT Page 2655 Board's administration of the implementation of the Teacher Evaluation System was arbitrary and capricious. The defendants further argue that this allegation is insufficient to give rise to a claim for remedies under 42 U.S.C. § 1983.
Additionally, the defendants argue that count five of the revised complaint should be stricken on the further ground that the plaintiff has failed to set forth facts indicating that she had a protected property interest in the proper implementation of the Teacher Evaluation System.
In response, the plaintiff argues that count five does, indeed, give rise to a claim under 42 U.S.C. § 1983. The plaintiff argues that count five contains numerous allegationsof intentional and/or reckless behavior on the part of the defendants. The plaintiff further argues that the revised complaint specifically alludes to a provision of the Teacher Evaluation System implemented by the Board which categorically guarantees due process in the administration of the plan. The plaintiff argues that procedural due process was not, in fact,afforded her in conjunction with the administration and implementation of the Teacher Evaluation System.
Additionally, the plaintiff argues that she has properly alleged facts which demonstrate that she has a property interest at stake. The plaintiff argues that, despite acontractual assurance of "due process," as set forth in the Teacher Evaluation Plan, the plaintiff received no pre- or post-placement hearing to protect her professional and personal reputation.
The due process clauses of the United States and Connecticut Constitutions contain the same prohibition and are given the same effect. Barde v. Board of Trustees, 207 Conn. 59,64, 539 A.2d 1000 (1988). "Because the [fourteenth] [a]mendment is directed at the states, it can be violated only by conduct that may be fairly characterized as `state action.'" (Citations omitted.) State v. Holliman, 214 Conn. 38,43, 570 A.2d 680 (1990). Additionally, "[t]here is no question but that the action of a local board of education constitutes `state action' for purposes of the federal constitution." (Citations omitted.) Lee v. Board of Ed.,181 Conn. 69, 71 n. 3, 434 A.2d 333 (1980). The court finds that the defendant Board and its agents are state actors. CT Page 2656
A party seeking to invoke the protections afforded by the due process clause must also allege a deprivation of a constitutionally recognized property or liberty interest. SeeMeeker v. Manning, 540 F. Sup. 131 (D.Conn. 1982). "Mere damage to one's reputation, without implicating a more tangible interest such as employment, is insufficient to invoke procedural protection of the Due Process Clause." (Citations omitted.) Sims v. City of New London, 738 F. Sup. 638,645 (D.Conn. 1990).
To establish a cause of action under § 1983, a plaintiff must allege that a deprivation of federal rights has occurred under color of any statute, ordinance, regulation, custom or usage. 42 U.S.C. § 1983. "[T]he touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution. . . ." (Citations omitted.) Tedesco v.Stamford, 215 Conn. 450, 456, 576 A.2d 1273 (1990). The United States constitution provides that the "State [shall not] deprive any person of life, liberty, or property, without due process of law. . . ." (Citations omitted.) Tedesco v.Stamford, 222 Conn. 233, 241, 610 A.2d 574 (1992).
In the present case, the plaintiff alleges harm not only to reputation, but also, that procedural due process was not afforded her in conjunction with the administration and implementation of the Teacher Evaluation System. The plaintiff further alleges that the defendants' behavior towards her was arbitrary and capricious. The court believes that the plaintiff has alleged damage on the part of the defendants with respect to her employment. A "legitimate claim of entitlement" to employment constitutes a tangible interest. See Board of Regents of State Colleges v. Roth,408 U.S. 564, 567, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
"A teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position . . . acquires a property right that is entitled to protection under the due process clause." (Citations omitted.) Lee v. Board of Ed., supra, 181 Conn. 72. Moreover, "[e]ven a nontenured teacher may have a liberty interest consisting of his reputation or honor that entitles him to due process protection upon his threatened termination for cause." Id., n. 4. The plaintiff, a tenured teacher, argues in her memorandum in opposition to the motion to strike CT Page 2657 that despite a contractual assurance of due process, as set forth in the Teacher Evaluation Plan, she received no pre- or post-placement hearing to protect her professional and personal reputation.
Where a person's, good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (Citations omitted.) Statewide Grievance Committee v.Presnick, 215 Conn. 162, 170, 575 A.2d 210 (1990). "[T]he remedy mandated by the Due Process Clause of theFourteenth Amendment is `an opportunity to refute the charge.'" Id. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name . . . . The subsequent `name-clearing' hearing is required only where the [plaintiff] affirmatively asserts that the report that has caused the stigma was substantially false." (Citations omitted.)Statewide Grievance Committee v. Presnick, supra, 215 Conn. 171.
In the present case, the plaintiff alleges that the statements made by defendants Pass and Carberry and contained in the formal evaluation report, and the oral and written statements accompanying it, were false and malicious. The plaintiff further alleges that her attempt to have those statements retracted in a "name-clearing" hearing was denied by the Board as not arbitrable under the terms and conditions of the Collective Bargaining Agreement between the Board and the Bloomfield Education Association. In the opinion of the court the plaintiff has alleged sufficient facts to give rise to a claim for a violation of due process under the United States and Connecticut constitutions. Therefore, the defendants' motion to strike count five of the complaint is denied.
Having ruled that this court the defendants' motion to strike count five of the plaintiff's revised complaint, the defendants' motion to strike the prayer for punitive damages relative to count five is also denied.
COUNT SEVEN — WORKERS' COMPENSATION STATUTE
In their memorandum of law in support of their motion to strike, the defendants argue that count seven of the revised complaint should be stricken because it is barred by the exclusivity provisions of General Statutes § 31-284 et seq., CT Page 2658 the Workers' Compensation Act. The defendants argue that General Statutes § 31-284 is a complete defense to a personal injury action. The defendants further argue that since count seven claims that the plaintiff was injured, suffering physical and emotional stress, due to the negligence of the employer, it should be stricken.
In response, the plaintiff argues that the defendants permitted unfit and incompetent vice-principals to conduct evaluations and administer the Teacher Assistance Plan. The plaintiff further argues that the "gravament [sic] of [count seven] is not that the workplace or work appliances were unsafe; it is that the defendants did not designate fit and competent persons to be the plaintiff's co-laborers, did not exercise reasonable care in the appointment or designation of vice-principals, did not appoint as such vice-principals fit and competent persons" in violation of General Statutes § 31-49. The plaintiff argues that the Workers' Compensation Act and General Statutes § 31-49 coexist in our statutory law, each to apply where appropriate. The plaintiff argues that she has alleged sufficient facts to give rise to a claim under General Statutes § 31-49. Thus, the plaintiff argues that her claims in count seven are not barred by the Workers' Compensation Act.
"The purpose of the work[ers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." Jett v. Dunlap,179 Conn. 215, 217, 425 A.2d 1263 (1979). Pursuant to General Statutes § 31-284 (a), an employer within the scope of the act is not liable in "any action for damages on account of personal injury sustained by an employee arising out of and in the course of his [or her] employment or on account of death resulting from personal injury so sustained. . . ." (Citations omitted.) Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660,665, 613 A.2d 838 (1992). The Connecticut Appellate and Supreme Court have consistently held that "the exclusivity provisions of the Workers' Compensation Act operate as a total bar to actions brought by employees against employers for job related injuries. . . ." (Citations omitted.) Quimby v.Kimberly Clark Corporation, supra, 28 Conn. App. 666; Suarezv. Dickmont Plastics Corporation, 30 Conn. App. 630, 633,621 A.2d 1356 (1993); Sharp v. Mitchell, 209 Conn. 59, 66,546 A.2d 846 (1988); Perille v. Raybestos-Manhattan-Europe, Inc.,
CT Page 2659196 Conn. 529, 532, 494 A.2d 555 (1985).
The Connecticut Supreme Court, however, has carved out a few exceptions to the exclusivity provisions in the Workers' Compensation Act. See Blancato v. Feldspar Corporation,203 Conn. 34, 43, 522 A.2d 1235 (1987) (exception for a minor who has been illegally employed); Jett v. Dunlap, supra, 179 Conn. 221
(exception for intentional torts committed by an employer). It is noted that the Supreme Court has consistently refused to extend the Jett exception to include "accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." (Citations omitted; internal quotation marks omitted.) Quimby v. KimberlyClark Corporation, supra, 28 Conn. App. 666. Moreover, "an intentional tort committed upon one employee by another, which causes personal injury arising out of and in the course of employment, is covered by the compensatory provisions of the Workers' Compensation Act. . . ." (Citations omitted.) Perillev. Raybestos-Manhattan Europe Inc., supra, 196 Conn. 532. The employer is only liable for the intentional torts of an employee where the employee can be identified as the alter ego of the employer, or the employer has directed or authorized the assault." Perille v. Raybestos-Manhattan Europe, Inc.,
supra, 196 Conn. 532-33. However, where the employee "is only another employee who cannot be so identified, then the strict liability remedies provided by the [Workers'] Compensation Act are exclusive and cannot be supplemented with common-law damages." (Citations omitted.) Id., 533.
The conduct alleged to form the basis of count seven was perpetrated by two co-workers, defendants Pass and Carberry, against another, and occurred in the course of their employment. Count seven contains no allegations of a genuine intent to cause injury on the part of the defendant Board. Nor does count seven allege that defendants Pass and Carberry acted as the alter ego of the defendant Board or that the Board had directed or authorized the conduct. Rather, the plaintiff alleges in count seven that "[t]he defendants engaged in negligent employment practices in the administration and implementation of the Teacher Evaluation System, and in allowing defendants Pass and Carberry to participate in the evaluation of [the] plaintiff in violation of [General Statutes §] 31-49." CT Page 2660
In short, none of the plaintiff's allegations in count seven, fairly read, indicate that the defendant Board genuinely "intended" the occurrence of any of the plaintiff's resulting injuries.
However, in arguing against the exclusivity of the Workers' Compensation Act, the plaintiff claims that under General Statutes § 31-49, she may maintain a direct action against the defendant Board for "not designat[ing] fit and competent persons to be the plaintiff's co-laborers, . . . not exercis[ing] reasonable care in the appointment or designation of vice-principals, . . . not appoint[ing] as such vice principals fit and competent persons."
General Statutes § 31-49 states, in pertinent part, that:
 It shall be the duty of the master to exercise reasonable care . . . in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master.
The plaintiff argues that General Statutes § 31-49 is applicable to the present case and thus permits a direct action against the defendant Board. The Supreme Court addressed this very issue in Perille v. Raybestos-ManhattanEurope, Inc., supra, 196 Conn. 529. In Perille, one employee brought a personal injury action against his employer based on an assault and battery committed upon him by another employee. Id., 530. Although the court articulated that the Workers' Compensation Act and General Statutes § 31-49 coexist in our statutory law, each to apply where appropriate. Id., it stated — "'the common-law liability of the employer cannot, under the almost unanimous rule . . . be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.'" (Underlining supplied. Id., p. 535, 6 quoting from Mingachos v. C.B.S.,Inc., 196 Conn. 191 (1985). The court then noted that inMingachos it was not directly confronted with any claims based upon § 31-49. After an exhaustive analysis of § 31-49 the court CT Page 2661 came to the conclusion that the alleged violation of that statute was clearly within the scope of the Worker's Compensation Act.
Viewing the allegations in a light most favorable to the plaintiff, this court concludes that count seven of the revised complaint is legally insufficient. Accordingly, the defendants' motion to strike count seven on the ground that the allegations contained therein are barred by the exclusivity provisions of the Workers' Compensation Act is granted.
COUNT EIGHT — APPLICABILITY OF GENERAL STATUTES § 10-235
In count eight of the revised complaint, the plaintiff seeks indemnification from the defendant Board pursuant to General Statutes § 10-235.
The defendants argue that General Statutes § 10-235 is inapplicable where the acts alleged against an employee are wanton, reckless, or malicious. The defendants further argue that in the present case, the plaintiff alleges that the employees of the Board acted maliciously. Therefore, the defendants argue that General Statutes § 10-235 is inapplicable to the present case. The defendants also argue that since General Statutes § 10-235 is an indemnification statute only, it does not permit a direct cause of action against the defendant Board.
In response, the plaintiff argues that General Statutes § 10-235 does not preclude indemnification by the defendant Board for malicious, wanton, or willful acts. The plaintiff argues that the defendants refer the court to the language in General Statutes § 10-235(a) only. However, the plaintiff argues, subsection (b) of General Statutes § 10-235 mandates that the Board afford coverage to employees for malicious, wanton or willful acts on the part of any employee while acting in the discharge of his duties. Therefore, the plaintiff argues that the defendant Board can be held to indemnify its employees should the court or jury enter a judgment against those employees.
General Statutes § 10-235 provides, in pertinent part, that: CT Page 2662
 (a) Each board of education shall protect and save harmless any member of such board or any teacher or other employee thereof . . . from financial loss and expense . . . arising out of any claim . . . by reason of alleged negligence . . . or any other acts . . . resulting in any injury, which acts are not wanton, reckless or malicious, provided such teacher, member or employee, at the time of the acts . . . was acting in the discharge of his or her duties or within the scope of employment or under the direction of such board of education.
 (b) In addition to the protection provided under subsection (a) . . . each local and regional board of education shall protect and save harmless any member of a local or regional board of education or any teacher or other employee thereof . . . from financial loss and expense . . . arising out of any claim . . . by reason of alleged malicious, wanton or wilful act . . . on the part of such member, teacher or other employee while acting in the discharge of his duties. In the event such member, teacher or other employee has a judgment entered against him for a malicious, wanton or wilful act . . . such board of education shall be reimbursed by such member, teacher or other employee for expenses it incurred in providing such defense and shall not be held liable to such member, teacher or other employee for any financial loss or expense resulting from such act.
In the opinion of this court, where it is alleged that the acts of the Board of Education's employees were malicious, the Board has no duty to indemnify such employees, but rather only has a duty to defend. See also Office of Legislative Research, Summary of 1990 Public Acts at 26-27 (relative to what has been codified as § 10-235(b): if judgment is entered against any employee for his or her acts that were malicious, the board is not liable to pay the judgment). Nothing in this section authorizes an action against the Board.
Since the plaintiff alleges the School Board employee's actions were malicious, and since § 10-235 does not provide indemnification for such actions, the plaintiff's claim for indemnification under § 10-235 in Count eight is stricken. CT Page 2663
Hale, State Trial Referee